Okay, the next case to be argued on our calendar is Duka v. Barr, No. 18-1621. Good morning, Your Honors. May it please the Court, my name is Paul Grotus. I'm here on behalf of the petitioner, Skitchim Duka. It is our position that the BIA clearly erred as a matter of law in denying petitioner's motion to reopen, based on new material evidence and changed country conditions. In this case, several different factors, when considered in the aggregate, demonstrate the petitioner's prima facie eligibility for asylum and warrant the reopening of the instant matter. It is our position that the Board of Immigration Appeals failed to give the appropriate weight to petitioner's expert affidavit and the background documents in erroneously concluding that the petitioner failed to establish an objective fear of returning. Sotomayor, Mr. Grotus, could you help me out? There were two expert reports, right? One was submitted by Dr. Fisher in, I guess, let's see, 2008, and the second in 2017. Is that right? Your Honor, those were the same expert reports. They were the same. I thought the second one was submitted in connection with the fourth motion to reopen. And it had to be, is that right? Yes. They were two different reports submitted by the same expert. Yes. They were on different bases. Well, but the second, I understood that the current motion to reopen, the fifth motion to reopen, was based largely on Mr. Duca's allegations that his father-in-law had been persecuted. And that the, part of the question was whether the BIA erred in failing to take into account the expert report. But the expert report didn't focus on that. It's talked about general relationships between ethnic Albanians in Macedonia. And it didn't really address the basis for his fifth motion to reopen. So I was having a difficult time seeing what the basis for the motion to reopen was and how the BIA's failure to take into account the revised and updated expert report was relevant. Could you help me out? Yes, Your Honor. The most recent motion to reopen is based upon Mr. Duca's fear of retaliation because his father-in-law was falsely accused. And the expert report works in tandem to that to explain police corruption and the corruption in his home country, which then lends credence to his claim that his father-in-law was falsely accused and that he would face retribution as a result. But it doesn't focus particularly. It just says generally the police are corrupt, don't do what they're supposed to do to protect people. Is that right? Yes, Your Honor. That's correct, Your Honor. As an immigration lawyer, it's always very difficult in trying to get an expert report that accurately assesses the specific factual scenario of your client's claim. Because some of these matters which occur in their home country are not as notorious or widespread because just sheerly because of the size of what is occurring. I can't have it. It's very difficult to ask an expert to report specifically on one specific case in a country and give credence to that specific claim where it is much more reasonable to ask an expert to report generally on country conditions. I have another question for you. My review of the record suggested that the updated expert report was submitted in connection with the fourth motion to reopen, which he did not petition for review of. We're now on the fifth motion to reopen. Is that correct? That is correct, Your Honor. So the BIA's decision on the fifth motion to reopen is what's before us, and the its consideration or not of the expert report might well be treated as irrelevant. Isn't that correct? It is our position that in the fourth motion to reopen, the BIA specifically pointed, in their denial, specifically pointed out evidence that was lacking, and we felt it was better that instead of filing a petition for review from the denial of that fourth motion to reopen and immediately seeking a remand based on evidence that we would file the evidence that we felt was lacking in the fourth motion to reopen in a fifth motion to reopen. Yeah. You know, when you have this many motions to reopen and little has really changed, it's difficult to, from all appearances the outside, it's difficult to overcome the numerosity and other limitations on motions to reopen. So let me ask you, if in the record right now, as it stands, is there anything that demonstrates a real nexus between his feared harm that he stated now and his father-in-law's conviction? Your Honor, I think that is a very apt question, which leads us directly down to the issue of matter of LEA-2. Matter of LEA-2, though, that's just the Attorney General saying that a family, a nuclear family, would not be considered as a particular social group. Exactly, Your Honor. However, that ties in specifically to the instant question of nexus. But doesn't that just undercut what your client is saying? It undercuts it now at the oral argument. We believe that it's appropriate for this Court to consider the validity of matter of LEA-2 in a briefing format. And currently, in the District Court of Columbia, there's a class action litigation seeking to challenge matter of LEA-2. But did he, has he really claimed that it's as a member of the family that he would be targeted? Or just that he's related to his father-in-law, and therefore, because his consequences, because of his political views, that he, he too might be targeted? It seems a little cast differently to me than the matters considered in LEA-2. Your Honor, we believe that it is strictly within the boundaries of matter of LEA-2 that he would face retribution and harm because of his relationship to his father-in-law. And you're arguing that the, what is the particular social group? Family. So any family, in-laws, you know, extended family, what are you? Your Honor, this is the exact moment that I dreaded in preparation. It's our position that whether the Petitioner meets the specific requirements of matter of LEA-2 should be done in briefing format. In law school and in preparation for oral arguments, I've always been taught that the oral argument should build upon the briefing and not in reverse. That matter of LEA-2 and whether the Petitioner fits within an opposing counsel conceded in their letter, LEA-2 is a watershed decision by the Attorney General. Opposing counsel said that even though it's a watershed decision, the Petitioner's claim falls outside of its ambit, but still, it's an appropriate matter for briefing to specifically answer the question which Your Honor has put before the Petitioner of whether the Petitioner's particular social group of his family. But your initial application, your motion to reopen, didn't say because he's a member of a social group, which is constituted of all family members of some undefined scope, that he should be, his petition should be granted. At the, Your Honor, we point to the administrative record when the Board denied the motion at page 516. The motion to reopen was based on his family relationship and being ethnic Albanian. I thought it was focused on ethnic Albanian, then it's been supplemented by his fear related to his father-in-law having been targeted. But we'll hear from the government about what its position on LEA-2 is and the rest. Thank you very much. You have two minutes for rebuttal also. Good morning, Your Honors. My name is Linda Doe, and I represent the government, United States Attorney General. As pointed out, Petitioner is seeking review of the Board's denial of his fifth motion to reopen. And he has not shown that a changed country conditions exception is warranted. He has not shown a material change rendering him prima facie eligible for the underlying asylum withholding of removal and cap protection requested. In regards to Petitioner's claim regarding his father-in-law, he makes no allegation that he has ever received threats or that the government or Macedonian, I'm sorry, Croatian mafia members had ever reached out to him or threatened him on account of his relationship to his father-in-law. In light of that, Petitioner's claim is solely speculative at best. Additionally, Petitioner, the evidence he had submitted does not corroborate or substantiate majority of the details of his claim. Petitioner did not submit any letters from his father-in-law or wife, despite having two to three years to obtain such evidence in his bid for reopening. Does the government accept that his father-in-law was targeted and was convicted for political activity? Petitioner submitted evidence by way of a 2014 article, page 100. And the article reflects that Macedonian authorities had detained four Macedonian citizens, three Croatian citizens, and two Albanian citizens in that incident, which they seized 23 kilograms of marijuana. The article does not denote any, that the arrest or the arrest was for military purposes, or that Petitioner's father-in-law had been targeted on account of his Albanian ethnicity, as Petitioner proclaims. Further note that neither the article nor the 2015, I believe, scope G basic court document he had submitted, may make any mention of a wiretap, which he claims was the basis of the arrest that he had been purportedly unlawfully arrested. If the evidence were otherwise, or if we were to disagree with you and find that he had a, had demonstrated an evidentiary basis for finding that he might be targeted because of what happened to his father, would matter of LEA II affect the analysis of the results, you know, how we ought to think about what that would mean? This Court wouldn't necessarily need to define that there had been a material change in circumstances in the country, they wouldn't need to find that Petitioner had submitted some objective evidence demonstrating that his fear was well-founded and would further need to find that there was evidence of a nexus at all to any protected ground. In this instance, the evidence does not support that finding at all. This is simply a dearth of evidence, despite Petitioner's time in being able to obtain such evidence in support of his claims. Without such a finding, it does not believe that we need not reach the matter of LEA in this instance without having to reopen the proceedings. And he has not shown that an exception to his temporally and numerically barred motion to reopen is even warranted in this instance. And for further note, that the Supreme Court has stated that motions to reopen are disfavored because there's a public interest in bringing litigation to a close specifically to, as in immigration proceedings as here, where an applicant is creative enough to deduce new evidence in support of a prima facie case. Whereas here, the Board's decision and denial of Petitioner's motion to reopen was rational in accordance with established policies, requests that the Court deny Petitioner's petition for review. Roberts, you have two minutes to rebuttal. Your Honors, may it please the Court, I would posit to the Court that opposing counsel has submitted that matter of LEA-2 has no impact on the underlying decision in this matter, because the Petitioner has failed to submit a bare minimum   warranted or not, that is the question. The evidence submitted meets the Petitioner's burden of proof is what LEA-2 specifically discusses. You can't separate the analysis as opposing counsel recommends the Court to do. But what evidence is there in the record that the reported arrest of the father-in-law has anything to do with what would happen to Mr. Duca were he to be removed? The arrest, the information regarding the arrest and the appeal, and the arguments regarding the Petitioner's father-in-law's innocence is the evidence. It's something that should be further developed at an individual hearing or a trial. When put before an immigration judge, they can weigh whether it's true or not. Not a motion to reopen. It's your obligation to adduce evidence suggesting that there's something, that there's a changed country condition, and you've not been able to point to anything in the record that shows a connection between the arrest of the father-in-law and what would happen to Mr. Duca were he to be removed. But I think the mere fact of the father-in-law's arrest is evidence of what would happen to Mr. Duca if he was removed. It is a sad, repeated tale of the targeting of ethnic Albanians in his home country. And that's what we would posit to the Court. Okay. Thank you. We'll take the matter under advisement. Thank you very much.